IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

GARY MADDEN,

                                                    OPINION AND ORDER
                    Plaintiff,
                                                    20-cv-1091-bbc
        v.

KILOLO KIJAKAZI[1],
Acting Commissioner of Social Security,

                    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff Gary Madden appeals an unfavorable decision of the Acting Commissioner of Social Security on his application for disability insurance benefits under the Social Security Act. Plaintiff argues that the administrative law judge (ALJ) erred by failing to account for the pain and limitations caused by plaintiff's somatoform disorder, failing to assess the medical opinions properly, and disregarding evidence regarding plaintiff's migraine headaches.

As explained below, I conclude that the ALJ failed to properly assess plaintiff's somatoform disorder and subjective symptoms. The ALJ also failed to adequately explain why he rejected the opinion of plaintiff's treating therapist. As a result, the, ALJ's assessment of plaintiff's residual functional capacity is not supported by substantial evidence. Accordingly, this case will be remanded for further proceedings.

_____

[1]The court has changed the caption to reflect Kilolo Kijakazi's appointment as acting commissioner.

The following facts are drawn from the administrative record (AR).

## FACTS

### A.  Social Security Application and Background

In September 2018, plaintiff Gary Madden applied for disability insurance benefits under the Social Security Act, alleging that he had been disabled since April 2014, at age 40, by migraines, complex regional pain syndrome depression, anxiety, weak legs, hand cramps, stomach pain, poor memory, foot impairment, and trauma.  AR 272.  He later amended his alleged onset date to July 2017.  AR 16.  In a function report, he stated that he had limitations in lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, memory, completing tasks, concentration, understanding, following instructions, using his hands, and getting along with others.  AR 308-13.  He also reported feeling depressed, anxious, having constant pain, frustration, and daily electric shocks.  AR 349.

Plaintiff's application was denied by the local disability agency initially and on reconsideration, AR 93, 131,whereupon plaintiff requested an administrative hearing.  The hearing was held in April 2020 before ALJ Michael Schaefer,  AR 35-92, who subsequently issued a decision finding plaintiff not disabled.

### B.  Plaintiff's Medical Records

Plaintiff's medical records show a history of treatment for a variety of physical and mental health conditions.  Doctors have diagnosed numerous impairments, including

complex regional pain syndrome, fibromyalgia, chronic pain, neuropathy, mild disc degeneration, and displacement, depression, anxiety, post-traumatic stress disorder, and a somatic symptom disorder.  The record also shows that medical providers have conducted numerous tests to explain plaintiff's symptoms, but that test results have not identified a cause for all of plaintiff's symptoms.

Plaintiff has used leg braces and custom orthotic shoes to treat leg and foot problems and associated pain since his childhood.  AR 314.  He received treatment for pain at Advanced Pain Management in Wausau, Wisconsin for several years, AR 800-823, that included  physical therapy,  AR 537, 706-86, and epidural steroid injections in his back on several occasions.  AR 531-32, 795-98.  He also received treatment at a hospital emergency room for headaches in January and August 2014.  AR 1513, 1584.

In March 2017, plaintiff was hospitalized for general weakness, numbness, extreme fatigue, and transient global amnesia (a sudden, temporary episode of memory loss not attributable to a stroke or other neurological event).    AR 537, 546.  Hospital staff conducted testing to determine the cause of plaintiff's symptoms, including blood work to rule out Lyme disease and auto-immune disorders, a urinalysis, an MRI and CT scan to rule out neurological problems, and an echocardiogram.  AR 556, 558-60, 640.  The test results were unremarkable and did not explain the cause of plaintiff's symptoms.  Plaintiff's doctors concluded that the symptoms were likely caused by anxiety and adjustment problems.  AR 557.

After his hospital stay, plaintiff continued to seek medical care for widespread pain. AR 698-69.  Over the next several months, plaintiff treated his pain with weekly chiropractic treatment, AR 1428, monthly lidocaine infusions, leg braces, a TENS unit, and multiple medications, including topiramate (nerve pain medication), amitriptyline (antidepressant and nerve pain medication), gabapentin (nerve pain medication), pregabalin (nerve pain medication), meloxicam (nonsteroidal anti-inflammatory medication), diclofenac (nonsteroidal anti-inflammatory medication) and ropinirole (dopamine promoter used to treat restless legs syndrome).  AR 723, 781, 789, 791.  Plaintiff tried physical therapy again in November 2017, but his physical therapist discharged him from the program because it was not lessening his pain and he continued to have an antalgic gait, core weakness, back pain, and poor balance.  AR 624-25.  Plaintiff also saw Juellette Higuera, a licensed therapist, for counseling and cognitive behavioral therapy on a biweekly basis.

In 2017 and 2018, plaintiff's medical providers continued to conduct testing to determine the source of plaintiff's numerous symptoms.  Plaintiff was referred to Dr. Verica Neskovic, a neurologist.  AR 705.  Dr. Neskovic conducted neurological testing but the results were unremarkable.  Dr. Neskovic concluded that plaintiff's symptoms had a psychiatric etiology.  AR 713-14.

Plaintiff saw Dr. Thomas Reilly, M.D., an interventional pain specialist, on several occasions for epidural pain treatment.  AR 749-50, 1460-63.  Dr. Reilly diagnosed a somatoform disorder, and recommended that plaintiff continue cognitive therapy and physical therapy.  AR 750.

In 2018, Dr. Kenechi Anuligo, M.D., one of plaintiff's primary care providers, saw plaintiff for complaints of muscle weakness, numbness, cramps, and widespread pain. Dr. Anuligo noted that testing for neuropathy was negative, AR 712, that plaintiff's x-rays and MRI results were unremarkable, and that plaintiff's strength and reflexes were normal. AR 708. Dr. Anuligo noted that plaintiff had "failed conservative treatment" options, and he noted that plaintiff's symptoms were likely psychological in origin. AR 744. He recommended counseling and psychiatric treatment. AR 713.

Another primary care provider, Dr. Robert Sedlacek, M.D., treated plaintiff for pain, cramping, headaches, weakness, anxiety, and depression during 2018 and 2019. Dr. Sedlacek concluded that some of plaintiff's symptoms were psychological in origin, or at least were aggravated by a panic disorder with agoraphobia. AR 875, 1268-69. He also noted at numerous appointments that plaintiff had difficulty focusing on a single topic. AR 1272, 1283-84, 1278-98. He recommended that plaintiff take quetiapine, an anti-psychotic medication, and continue counseling and mindfulness practice. AR 875. Dr. Sedlacek noted that plaintiff's mental health concerns were poorly controlled despite his having tried numerous medications for depression, anxiety, and insomnia, including zolpiden (insomnia medication), nortriptyline (antidepressent), quetiapine (antipsychotic), risperidone (antipsychotic), escitalopram and buspirone (anti-anxiety). AR 1258.

C.  Administrative Hearing

An administrative hearing was held in April 2020 before ALJ Schaefer. Plaintiff was represented by counsel at the hearing.  Plaintiff testified that he lived at home with his wife, and that they relied on her disability benefits for their income.  AR 50, 53.  He testified that he had not worked since 2014 because of his anxiety, depression, balance problems, severe headaches, and chronic pain and cramping in his arms, legs, feet, hands, stomach, and back. AR 52, 56-58, 64.  Plaintiff stated that he had pain in his legs and feet every day, and that he had a difficult time standing, walking, and sleeping.  AR 65.  He also testified that he had problems closing his hands, AR 67, and that he could no longer hunt, fish, fix cars, or write for extended periods because of his hands.  AR 67-75.  He explained that his doctors had not been able to diagnose the cause of his pain, AR 70, that he had tried physical therapy five times without success, AR 58, 60, and that he had been meeting with a therapist for counseling every week for six years.  AR 58.  Plaintiff said that he had migraine headaches every day for up to three hours, and that he had to take ibuprofen and sit in a dark room to feel better.  AR 61-63.  Plaintiff testified that despite his impairments, he could drive and manage his own money.  AR 51.

The ALJ asked a vocational expert to assume a hypothetical individual with plaintiff's age, education, work experience, and residual functional capacity.  AR 78-79.  The vocational expert testified that such an individual could not perform plaintiff's past relevant work but could perform other jobs in the national economy such as final assembler (17,000 jobs in national economy), table worker (9,300 jobs) and address clerk (10,700 jobs).  AR 79-80.

### D.  The ALJ's Decision

In August 2020, the ALJ issued a decision finding that plaintiff was not disabled.  AR 16-28.  The ALJ found that plaintiff had the severe impairments of fibromyalgia, spine disorder, somatoform disorder, peripheral neuropathy, anxiety, post-traumatic stress disorder, and osteoarthritis of the right foot and bilateral toes, but that none of the impairments met or medically equaled a listed impairment.  AR 19.  The ALJ found that plaintiff's migraines were not a severe impairment because his records indicated that they were managed with over-the-counter medications and, although plaintiff stated that he had been to the emergency room for migraines, his medical records did not show frequent trips of that sort.  AR 19.  The ALJ determined that plaintiff had the residual functional capacity to perform sedentary work, with additional limitations as follows:

> [T]he claimant can occasionally climb ramps or stairs, but never ladders, ropes, or scaffolds. The claimant can occasionally balance, stoop, kneel, crouch, or crawl. The claimant can frequently handle and finger with the bilateral upper extremities. The claimant must avoid more than occasional exposure to extremes of cold, heat, wetness, humidity, or vibration. He must avoid more than occasional exposure to workplace hazards (including moving machinery and unprotected heights). The claimant must avoid exposure to more than moderate levels of noise or light, defined as the degree of noise or light found in ordinary retail or office settings. The claimant can understand, remember, or carry out only simple instructions and routine tasks in a work environment with few, if any, changes in work duties. The claimant is capable of only occasional interactions with public, co-workers, or supervisors.

AR 21.  Based on the vocational expert's testimony, the ALJ found that plaintiff remained capable of performing work in the national economy, including as a final assembler, table worker, and address clerk.  AR 26.

The Appeals Council denied plaintiff's request for review, making the ALJ's decision the final decision of the acting commissioner.  AR 1-6.

OPINION

Plaintiff appeals the ALJ's decision, contending that the ALJ erred in finding him not disabled. The case is now before this court to determine whether the ALJ's decision is supported by substantial evidence, that is, "sufficient evidence to support the agency's factual determinations." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).  The threshold for sufficiency is not high; the substantial evidence standard requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.  The ALJ must identify the relevant evidence and build a "logical bridge" between that evidence and the ultimate determination.  Moon v. Colvin, 763 F.3d 718, 721 (7th Cir. 2014).  In reviewing an ALJ's decision, the court applies a common-sense reading and considers the opinion as a whole.  Winsted v. Berryhill, 923 F.3d 472, 478 (7th Cir. 2019).

Plaintiff contends that the ALJ's decision is not supported by substantial evidence because: (1) the ALJ failed to adequately account for plaintiff's somatoform disorder and associated subjective symptoms; (2) the ALJ failed to adequately assess medical opinions; and (3) the ALJ disregarded evidence regarding plaintiff's migraines.

A.  <u>Somatoform Disorder</u>

A somatoform disorder is a disorder in which the physical pain and other symptoms that a person feels are related to psychological factors and cannot be traced to a specific physical cause.  <u>See</u> https://my.clevelandclinic.org/health/diseases/17976-somatic-symptom -disorder-in-adults (last visited February 28, 2022).  The physical symptoms, often pain or fatigue, may have no medical explanation, but cause the patient to experience major emotional distress and problems functioning.  <u>See</u> https://www.mayoclinic.org/diseases-cond itions/somatic-symptom-disorder/symptoms-causes/syc-20377776 (last visited February 28, 2022). <u>See also</u> <u>Adaire v. Colvin</u>, 778 F.3d 685, 686 (7th Cir. 2015) (somatoform disorder is "a mental condition that causes pain that has no known physical cause").  In this case, the ALJ found that plaintiff's somatoform disorder was a severe impairment.  AR 19, 23.  However, plaintiff argues that the ALJ failed to account for plaintiff's somatoform disorder when assessing his subjective complaints of pain, when weighing the medical opinions, and when determining plaintiff's residual functional capacity.

Plaintiff's arguments are persuasive.  The ALJ considered physical explanations for plaintiff's pain, noting that plaintiff's complaints were not supported by objective evidence.  AR 22.  The ALJ noted that imaging showed only a small disc protrusion and mild degenerative changes, and that neurological testing showed no evidence of peripheral neuropathy that would explain plaintiff's weak grip strength.  <u>Id.</u>  The ALJ also noted that plaintiff's impairments were not significant enough to require treatment by a rheumatologist or orthopedic surgeon.  <u>Id.</u>  However, it is well-established that an ALJ may not discredit a

claimant's testimony about subjective symptoms merely because they are unsupported by objective evidence, such as x-rays, nerve tests, or CT scans.  Simila v. Astrue, 573 F.3d 503, 517 (7th Cir. 2009); SSR 96–7p(4).  This is particularly true where there is a somatoform disorder diagnosis, as a prime feature of the disorder is that the severity of the symptoms experienced by the applicant is not supported by clinical, objective evidence of a physical impairment.  Adaire, 778 F.3d at 686 (ALJ erred by discounting claimant's testimony about pain from somatoform disorder that could not "be attributed to 'objective' injuries or illnesses"); Nowling v. Colvin, 813 F.3d 1110, 1113–14 (8th Cir. 2016) ("Subjective perceptions of somatoform effects may, in fact, be debilitating even when clinical or diagnostic medical evidence does not fully support the claimed symptoms.").

I have no doubt that it can be difficult for an ALJ to make a credibility assessment in a case involving a somatoform disorder.  The ALJ cannot consider only the objective evidence, but must also consider other factors such as the claimant's daily activities, allegations of pain, aggravating factors, types of treatment received, medication taken, and demonstrated functional abilities and limitations.  Nowling, 813 F.3d at 1114.

In this instance, the ALJ mentioned some of these factors in discussing plaintiff's credibility, but did not explain how they related to plaintiff's somatoform disorder and allegations of pain.  For example, in discussing plaintiff's abilities, the ALJ noted that plaintiff's gait was antalgic during some exams, but normal during other exams, AR 23, and that plaintiff had normal sensations and reflexes.  AR 22-23.  But the ALJ did not explain why these observations were inconsistent with plaintiff's allegations of chronic pain caused

by a somatoform disorder.  Adaire, 778 F.3d at 686 (ALJ noted that plaintiff did not limp, but "didn't explain why, if the applicant's evidence of pain were truthful, it would imply that he limps").

Similarly, the ALJ noted that plaintiff had received only conservative treatment, AR 22, but the ALJ did not explain why plaintiff's treatment was conservative for a somatoform disorder or why the treatment that plaintiff had received undermined his allegations of pain. As plaintiff points out, standard treatment for a somatoform disorder consists of cognitive behavioral therapy, medication, and a reduction in stress.  See https://www.mayoclinic.org/diseases-conditions/somatic-symptom-disorder/diagnosis-treatment/drc-20377781 (typical treatment for somatic symptom disorder includes psychotherapy and antidepressant medication) (last visited February 28, 2022).   Plaintiff's medical records show that he sought and received several types of treatment for symptoms caused by his somatic disorder for several years.  He saw a therapist weekly, tried numerous medications for pain, depression, anxiety, and psychosis, and tried steroid injections, physical therapy, and chiropractic treatment to alleviate his pain.

The acting commissioner argues that the ALJ properly discounted plaintiff's subjective symptoms on the ground that plaintiff had declined referrals by his primary care doctor and therapist to see a pain psychologist and a psychiatrist.  AR 23 (citing AR 943, 1395). However, the ALJ failed to explore why plaintiff had declined the referrals.  As plaintiff points out, numerous statements in the medical record show that plaintiff was concerned about finances and transportation, AR 942, 984, 993, 2043, that plaintiff had had to stop

at least one treatment for financial reasons, AR 1133, and that he had agreed at one time to see a psychiatrist located nearby. AR 1437.  It was error for the ALJ to conclude that plaintiff had refused recommended treatment without first determining whether there was a basis for plaintiff's refusal and if there was, why the refusal undermined plaintiff's description of his subjective symptoms.  SSR 16-3p, 2017 WL 5180304 at *9-10 ("We will not find an individual's symptoms inconsistent with the evidence in the record [based on the individual's failure to follow prescribed treatment] without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints.").

The acting commissioner also argues that the ALJ properly discounted plaintiff's subjective symptoms based on plaintiff's daily activities.  However, the ALJ's assessment of plaintiff's activities was flawed.  The ALJ stated that plaintiff's hobbies included hunting and fishing, but there was no evidence in the record that plaintiff had hunted or fished since his onset date, and plaintiff testified at the administrative hearing that he had not hunted or fished since 2003.  AR 75.  The ALJ also noted that plaintiff could use a snow blower and fix lawnmowers, AR 23, but again, the record does not support a finding that plaintiff did either of those activities on a regular basis.  The evidence relating to lawnmowers suggested that plaintiff occasionally "played" and "diddled" with a small lawnmower in his shed because he got bored and irritated after being in his house all day.  AR 74, 1020-21.  The ALJ did not explain why such activity undermined plaintiff's allegations of chronic pain or how such activity suggested that plaintiff could hold a full-time job.

Finally, the acting commissioner argues that the ALJ accounted for plaintiff's subjective allegations by restricting him to sedentary work, which reflects very serious limitations. However, by failing to properly consider plaintiff's somatoform disorder and subjective symptoms of pain, cramping, and numbness, the ALJ's conclusion that plaintiff could work a full-time job at the sedentary level was not supported by substantial evidence. Therefore, the case must be remanded so the ALJ can properly consider the limitations caused by plaintiff's somatoform disorder.

B. <u>Medical Opinions</u>

Plaintiff contends that the ALJ erred by giving weight to the opinion of Dr. Jesse Frey, Psy. D., a consultative examiner, and discounting the weight of plaintiff's treating therapist, Jullette Higuera. Dr. Frey met with plaintiff and conducted a mental status examination in February 2019. AR 1017-21. Dr. Frey gave the opinion that plaintiff had no limitations in his ability to understand, remember, and carry out simple instructions; no limitations in his ability to maintain concentration, attention, and work pace; no limitations on his ability to adapt to changes; moderate limitations in his ability to respond appropriately to supervisors and coworkers; and moderate limitations in his ability to withstand routine work stress. AR 1021. The ALJ found Dr. Frey's opinion to be persuasive, but stated that Dr. Frey's use of the term "moderate" was vague. AR 24. The ALJ went on to restrict plaintiff to occasional interactions with co-workers, supervisors, and the public. <u>Id.</u>

13

Plaintiff argues that the ALJ erred by failing to explain why Dr. Frey's assessment of moderate contact with others equated to occasional contact. But this argument amounts to nit-picking and is not persuasive. The ALJ adequately explained why he limited plaintiff to occasional contact with others, AR 20, 24, and plaintiff has failed to explain why the ALJ's restriction constitutes a deviation from Dr. Frey's opinion.

Plaintiff's argument regarding the ALJ's treatment of the opinion of Jullette Higuera, plaintiff's longtime therapist, is more persuasive. Higuera completed a questionnaire regarding plaintiff's work abilities in April 2019. AR 1171-81. She gave the opinion that plaintiff had marked limitations in his daily activities, social functioning, and concentration, persistence, or pace. AR 1172, 1178-79. She indicated that plaintiff had experienced repeated episodes of decompensation, and she gave the opinion that plaintiff could focus for one-hour periods, would be off-task 30% of the workday and would miss five or more days of work per month. AR 1174, 1177. Higuera also noted that plaintiff would have significant limitations in his ability to complete a normal workday and workweek, AR 1176, that he had obsessive rumination and stressful thoughts, AR 1177, and that he would be able to sustain work only 60% of the time. AR 1178.

The ALJ found Higuera's opinion to be "unpersuasive" because it was inconsistent with the record in two respects: plaintiff's ability to drive and plaintiff's ability to complete, albeit at a slow pace, the "serial 3's" calculation during Dr. Frey's evaluation of plaintiff. AR AR 25  Id. (citing AR 1020). I agree with plaintiff that the ALJ's analysis of Higuera's opinion was inadequate. Although there were years of medical records documenting

14

plaintiff's mental health problems, the ALJ identified only two matters he thought were inconsistent with Higuera's opinions and then failed to explain adequately why the two matters were inconsistent with Higuera's numerous opinions.  In addition, the ALJ failed to analyze whether Higuera's opinions were consistent with her own treatment records and those of plaintiff's other providers, which documented plaintiff's poor judgment and insight, depression, obsessive negative thoughts, reports of pain and other physical symptoms, and frequent reports of stress anxiety.  AR 978, 981, 984, 987, 990-1003.  The case must be remanded so that the ALJ can reconsider Higuera's opinion and provide an adequate explanation for the weight given to it.

## C.  Migraines

Plaintiff also contends that the ALJ erred by finding that plaintiff's migraines were not severe and did not cause any work-related functional limitations.  However, as the acting commissioner argues, there is conflicting evidence in the record regarding the seriousness of plaintiff's migraines, and the ALJ cited treatment records showing that plaintiff's migraines were alleviated with over-the-counter medications.  AR 19.

Because this case is being remanded for other reasons, I need not determine whether the ALJ's analysis of plaintiff's migraine headaches would be an independent basis for remand.  On remand, however, the ALJ should consider whether more information is needed regarding the functional limitations caused by plaintiff's migraines.

15

ORDER

IT IS ORDERED that the decision denying benefits to plaintiff Gary Madden is REVERSED and this case is REMANDED to defendant Kilolo Kijakazi, Acting Commissioner of Social Security, for further proceedings consistent with this opinion.


Entered this 1st day of March, 2022.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge